UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

ALLIANZ INSURANCE COMPANY OF CANADA
a/s/o TRIZECHAHN ONE NY PLAZA LLC,	:

    Plaintiffs,	:	03 Civ. 0833 (KMW)

      -against-	:	ORDER

STRUCTURE TONE (UK), INC, &
EAGLE DISMANTLING CORP.,	:

    Defendants.	:

------------------------------------X

EAGLE DISMANTLING CORP.,	:

    Third-Party Plaintiff,	:

      -against-	:

THE CITY OF NEW YORK,	:

    Third-Party Defendant	:

------------------------------------X

STRUCTURE TONE, INC. s/h/a
STRUCTURE TONE (UK), INC.,	:

    Second Third-Party Plaintiff	:

      -against-	:

THE CITY OF NEW YORK,	:

    Third-Party Defendant	:

------------------------------------X

WOOD, U.S.D.J.:

**I. Overview**

Plaintiff Allianz Insurance Company of Canada ("Allianz") is the subrogee of its insured TrizecHahn One NY Plaza, LLC ("Trizec"). One New York Plaza, a building owned by Trizec, was damaged by the explosion of a chiller/turbine in its sub-basement on August 11, 2001. Trizec then contracted with defendant Structure Tone, Inc. ("Structure Tone") to perform work (the exact parameters of which are disputed) in connection with clean up and the replacement of the damaged chiller/turbine. Structure Tone then sub-contracted the dismantling and removal of the chiller/turbine to defendant Eagle Dismantling Co. ("Eagle"). On December 1, 2001, while Eagle was dismantling the turbine, a fire erupted. The fire resulted in significant damage to the sub-basement and adjacent building. Allianz paid Trizec $1,457,423.59 for the damage under Trizec's property damage insurance policy, the only relevant policy Trizec held. Allianz sued Structure Tone and Eagle for negligence and breach of contract.[1] Structure Tone and Eagle then filed a third party complaint against New York City ("NYC"), alleging that the damages were caused in large part by negligence on the part of the Fire Department.

Defendants Structure Tone and Eagle move for summary judgment against Allianz based on waiver of subrogation in the contract between Trizec and Structure Tone. Allianz contends that summary judgment is inappropriate because any waiver in the contract does not bind Allianz, or alternatively because there are material issues of fact as to the scope of the waiver. NYC moves for summary judgment against Structure Tone and Eagle, arguing that New York

---

[1]Subject matter jurisdiction lies in this action because Allianz is a foreign corporation, and ST and Eagle are both New York corporations and because the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

law does not permit claims for negligent firefighting. Structure Tone and Eagle argue that their claims are permitted because the firefighters' actions fell beyond the scope of their permitted discretion under New York law,[2] and because the firefighters formed a special relationship with Structure Tone and Eagle, and are thus not protected by the general rule barring negligence claims. Because the Court concludes that any rights of subrogation held by Allianz were effectively waived in the contract between Trizec and Structure Tone, summary judgment is granted to Structure Tone and Eagle. The Court therefore need not reach the summary judgment motions by New York City, because they are now moot.

## II. The Contract

The parties agree on many of the key facts underlying this motion, but differ in their interpretations of those facts. Because Structure Tone and Eagle move for summary judgment, however, the Court construes the evidence in the light most favorable to Allianz and draws all reasonable inferences in Allianz's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1988).

Trizec hired Structure Tone to renovate certain parts of the sub-basement at One New York Plaza, pursuant to a contract with an effective date of November 7, 1991, which was not signed until June 22, 2002. See Structure Tone's Notice of Motion, Exhibit C at STI000041 &

---

[2]The parties agree (correctly) that New York law governs all of the claims in this dispute.

STI000058. (Structure Tone then subcontracted aspects of the repairs to Eagle.[3] See generally Weinstein Aff., Exhibit 3. )

The contract between Trizec and Structure Tone required that Trizec "purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Paragraph 11.3 of AIA Document A201." Structure Tone's Notice of Motion, Exhibit C at STI000055. The "AIA document" incorporated by reference is a document by the American Institute of Architects setting forth recommended "General Conditions of the Contract for Construction." The contract refers specifically to the 1987 edition of the AIA form. Structure Tone's Notice of Motion, Exhibit C at STI000041.

As to the type of insurance Trizec was required to obtain, paragraph 11.3.1 of the AIA form requires "property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site . . . . This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work." Paragraph 11.3.1.1 provides that "[p]roperty insurance shall be on an all-risk policy form and shall insure against the perils of fire . . . ." Paragraph 11.3.7 of the AIA form is a waiver of subrogation, providing that:

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . .

---

[3]That contract provides that "[t]he insurance and indemnification provisions are set forth in the separate Blanket Insurance/Indemnity Agreement signed by Subcontractor, the terms of which are incorporated herein. In the absence of said Agreement, the following indemnification and insurance provisions shall apply." Those provisions then provide that Eagle will fully indemnify the owner and Structure Tone for any damages arising from its work, and will carry general liability insurance naming Structure Tone as an additional insured. Weinstein Aff., Exhibit 3, STI000029. There appears to be no separate Blanket Insurance / Indemnity Agreement.

> for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. . . . The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise. . . .

Additionally, paragraph 11.3.5 provides for waiver of damages covered by insurance if the Owner insures "properties adjoining or adjacent to the site by property insurance under policies separate from those insuring the Project."

Trizec did maintain insurance on the property, but only under a blanket policy that covered all of Trizec's property holdings worldwide. Trizec did not have a separate policy for One New York Plaza, or the construction itself. The policy was entered into approximately a year prior to Structure Tone's contract with Trizec, and (contrary to the requirements of that contract) the policy does not include any "waivers of subrogation by endorsement or otherwise." See generally Weinstein Aff., Exhibit 5.

**III. Analysis**

To prevail on a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact to be tried, and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Citizens Bank v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991). The moving party "bears the initial responsibility of informing the district court of the basis for its motion"; that responsibility includes identifying the materials in the record that the moving party

5

believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).

Allianz contends that the waiver provision should not be enforced. In the alternative, if the waiver is enforced, Allianz contends that it applies only to damages to the site of the contractors' work, and not to damages to the surrounding building. Both of these arguments fail.

**A. Is the Waiver of Subrogation enforceable under New York law?**

As a general matter under New York law,[4] where a party has waived its right to subrogation, the party's insurer has no cause of action. See Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 660, 665 N.Y.S.2d 47 (1997) (concluding that waiver of subrogation clause in insured's lease precluded action by subrogated insurance carrier against building owner); S.S.D.W. Co. v. Brisk Waterproofing Inc., 76 N.Y.2d 228, 229, 557 N.Y.S.2d 290 (1990) (holding that waiver of subrogation in construction contract barred action by owner's insurer against subcontractor as to area of construction, but not as to surrounding area not included in waiver); Extaza of 34th Street v. City Stores, Inc., 62 N.Y.2d 919, 921, 479 N.Y.S.2d 5 (1984) (finding no cause of action by insurer against landlord where, by lease, tenant was required to carry policy with waiver of subrogation, and policy stated that insured-tenant's right

---

[4]The parties agree (and are correct) that New York law governs.

to recover would not be affected by any releases from liability by the insured); see also Travelers Indem. Co. of Conn. v. Losco Group, 136 F. Supp. 2d. 253, 256-57 (S.D.N.Y. 2001) (granting motion to dismiss contract and negligence claims by the building owner's insurer where contract stated that "the owner and architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction").

The contract here requires Trizec to obtain insurance, and incorporates by reference paragraph 11.3.7 of the AIA form--which contains an express waiver of all rights as among the owner, contractor, and subcontractors. "[A] subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies." Spier v. Erber, 759 F. Supp. 1024, 1027 (S.D.N.Y. 1991) quoting United States Fidelity and Guar. Co. v. E.W. Smith Co., 46 N.Y.2d 498, 504, 414 N.Y.S.2d 672, 674 (1979). Trizec has waived its right to sue Structure Tone as to all damages covered by the property insurance policy; as a general matter, Allianz has no further rights than its subrogor Trizec.

Allianz argues that "[u]nder New York law, however, an insurer cannot be bound by a waiver of subrogation to which it was not a party and of which it was not aware." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 9. However, Allianz fails to cite any precedent for this assertion.

The primary case to which Allianz cites is Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 126-27 (S.D.N.Y. 1997) affirmed sub nom Farrell Lines v. Ceres Terminals, Inc., 161 F.3d 115 (2d Cir. 1998). However, Farrell is a case under federal admiralty law, and thus a case that gives little insight into what the New York Court of Appeals would do if

faced with the case before this court. See Plummer v. Lederle Laboratories, 819 F.2d 349, 355 (2d Cir. 1987) ("federal court sitting in diversity must follow the law directed by the [highest] Court of the state whose law is found to be applicable"). A waiver of subrogation rights may be, as Allianz contends, different in kind from a waiver of rights generally. As the Court in Farrell put it:

> the insurer is not a party to the [contract] until the insurer becomes subrogated to the insured's rights, and the insured and a third party should not be able to eliminate the insurer's equitable subrogation rights without the insurer's consent. However, once the insurer becomes subrogated, it steps into the insured's shoes and essentially becomes a party to the [contract].

Farrell, 32 F. Supp. 2d at 126-27. Based on this reasoning, Farrell states, in dicta, that an insurer may not be bound by a waiver of rights by its insured without the insurer's knowledge or consent.[5] Id. at 126. But Farrell itself merely holds that once an insurer is subrogated, that insurer has the same rights as the insured and thus is bound by the insured's contract (specifically, a forum selection clause). Farrell, 32 F. Supp. 2d at 126-27.

Courts nationwide indeed are split as to whether subrogation waivers by insureds bind their insurers, as one court observed:

> A line of authority holds that the carrier, as an innocent subrogee, is not bound by the waiver of its subrogor, the insured. See ICC Industries, Inc. v. GATX Terminals Corp., 690 F.Supp. 1282, 1286 (S.D.N.Y.1988) [(interpreting New Jersey Law)]; Zurich-American Insurance Co. v. Eckert, 770 F.Supp. 269, 272-73 (E.D.Pa.1991); Seamless Floors by Ford, Inc. v. Value Line Homes, Inc., 438 S.W.2d 598, 601-02 (Tex.App.1969); St. Paul Fire and Marine Insurance Company v. Amerada Hess Corp., 275 N.W.2d 304, 308 (N.D.1979); Aluminum Product Distributors, Inc. v. AAACon Auto Transport, Inc., 404 F.Supp. 1374,

---

[5]For this, Farrell relies on two admiralty cases, Continental Ins. Co. v. Washeon Corp., 524 F.Supp. 34, 36 (E.D.Mo.1981), and Alamo Chemical Transp. Co. v. M/V Overseas Valdes, 469 F.Supp. 203, 212 (E.D.La.1979) that hold that a waiver of subrogation cannot be effected without the insurer's knowledge.

8

>1377 (W.D.Okla.1975); <u>Continental Insurance Company. v. Washeon Corp.</u>, 524 F.Supp. 34, 36 (E.D.Mo.1981); <u>Alamo Chemical Transportation Co. v. M/V Overseas Valdes</u>, 469 F.Supp. 203, 212 (E.D.La.1979).
> Cases supporting the view that where the subrogor has waived subrogation rights, the subrogee's rights are similarly impaired, are probably the minority position. <u>Millican v. Wienker Carpet Serv.</u>, 44 Wash.App. 409, 722 P.2d 861 (1986); <u>Richmond Steel, Inc. v. Legal and General Assur. Soc.</u>, 821 F.Supp. 793, 800 (D.Puerto Rico, 1993); 16 G. Couch, Insurance, Sec. 61:194, 251-52 (rev. ed.1983).

<u>Continental Insurance Co. v. Boraie</u>, 288 N.J. Super. 347, 672 A.2d 274 (N.J. Super. Ct. 1995) (concluding that New Jersey law takes the minority position of enforcing such waivers). However, Allianz does not point the Court to any precedent in which a New York court, or any court applying New York law, refused to enforce a waiver of subrogation rights by an insured against an insurer based on the insurer's lack of knowledge (or consent).[6] And, as cited above, there are numerous decisions enforcing such waivers.

Allianz tries to distinguish these decisions. Allianz points out that Trizec's coverage was limited to a general property policy pre-dating the construction agreement. In contrast, the owner in <u>Travelers</u>, <u>supra</u>, had a builder's risk policy specific to the construction project, which Allianz implies was therefore more likely to contemplate the waiver of subrogation in the construction contract. 136 F. Supp. 2d. at 254. And in <u>Extaza</u>, Allianz points out, the New York Court of Appeals enforced a waiver of subrogation, but the insurance policy expressly contemplated such a waiver. 62 N.Y.2d at 921. Here, the policy lacks such a waiver and there is no indication that Allianz was aware of the waiver (or even the construction contract generally). Myriad cases,

---

[6] Allianz also cites <u>Fireman's Fund Ins. Co. v. Siemens Energy & Automation Inc.</u>, 948 F. Supp. 1227, 1241 (S.D.N.Y. 1996), a decision under New York law. However, despite dicta suggesting that the insurer's subrogation rights could not be waived without its knowledge, the decision in <u>Fireman's Fund</u> turns on the court's reading of the disputed provision as not waiving the rights in question (regardless of whether the waiver could bind the insurer). <u>Id.</u> at 1241.

9

though, have enforced subrogation waivers with no indication as to the nature of the policy involved. See Kaf-Kaf, Inc., 90 N.Y.2d 654 at 660; S.S.D.W., 76 N.Y.2d at 229; Agostinelli v. Stein, 17 A.D.3d 982, 984-85, 794 N.Y.S.2d 759 (4th Dep't 2005). Despite the conflicting law from other jurisdictions, there is simply no indication that a New York court would refuse to enforce the waiver of subrogation in this case, see Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 89 (S.D.N.Y. 2002) (federal court sitting in diversity attempts to interpret relevant law as state court would), and Allianz provides no persuasive reason for this Court to depart from the general rule of enforcing such waivers.[7]

Allianz contends also that the waiver is a release from liability executed by an insured after the date of loss, and therefore invalid, because the contract, although in effect as of November 7, 2001, was not signed until June 22, 2002, almost a year after the explosion. Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment at 10. This argument is a tad disingenuous. Obviously Allianz cannot contend that the contract was not in effect as of the date of the explosion--it must have been in order for Allianz to bring suit under it. See Complaint and Jury Demand at ¶ 27 ("On or about November 7, 2001, Trizec[] and Structure Tone entered into a written contract for the repair of the destroyed chiller/turbine unit, known as the Standard Form of Agreement Between Owner and Construction Manager. . ., the terms and conditions of which are incorporated by reference herein with the same force as though fully set forth."). The allegations in the complaint are judicial admissions by Allianz,

---

[7]Allianz complains that several of the New York cases enforcing subrogation waivers are in the landlord-tenant context, which it claims is distinct from the construction context. Given the numerous decisions enforcing subrogation waivers in the construction context, this argument is unpersuasive.

and it is bound by them. Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding.'" quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir.1985) (party cannot contradict its own pleading with affidavits) and citing Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir.1997) ("plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts" and "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible") (internal quotation marks omitted))).

Because Allianz cannot complain about the validity of the contract, and because waivers of subrogation are generally enforceable under New York law, the waiver in the contract between Structure Tone and Trizec effectively waives Allianz's rights as against Structure Tone and Eagle.

**B. What is the scope of the waiver of subrogation?**

The question remains, then, as to the scope of the waiver to be enforced against Allianz. The primary waiver provision in paragraph 11.3.7 states that "[t]he Owner and Contractor waive all rights against (1) each other and any of their subcontractors . . . each of the other . . . for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." (emphasis added). Allianz contends that the waiver thus is limited to the scope of "the work" under the

11

contract. Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment at 11.

For this interpretation, Allianz relies on the Court of Appeals' decision in S.S.D.W. Co. v. Brisk Waterproofing Co., Inc., 76 N.Y.2d 228, 556 N.E.2d 1097, 557 N.Y.S.2d 290 (1990). The Court in Brisk was interpreting the waiver provision in an earlier version of the AIA form incorporated by reference in the contract between Allianz and Structure Tone. The owner in Brisk contracted with a general contractor to perform construction "of limited scope" "to the Masonry and Concrete portions of Exterior Walls and the Parking Garage Floor Slab" of the building. Id. at 229. The contract at issue stated that the owner waived all rights against the contractor for damages "to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work." Id. at 232. The Court considered the question of whether such a waiver by the owner "bar[red] the subrogation claim of its insurer for damages caused by the contractor in areas of the building outside the limits of the Work." Id. Based on the language of the contract alone, the Court concluded (over a strenuous dissent) that the parties had intended to waive subrogation rights only as to the specific area of the construction project (presumably the masonry, etc., where the construction was taking place) and not as to any damage to the rest of the building.

The dissent objected to the majority's interpretation, noting that "[r]ather than promoting certainty as to the liability of the parties to these standard contracts, the majority's construction of this standard waiver clause invites litigation as to whether the damages in any particular case fall within the scope of the work to be performed under the contract." Id. at 237 (Alexander, J. dissenting). Quoting a Florida court, the dissent observed:

12

> The owner had, as all owners always have, the right to insure his own property for his own exclusive benefit without the consent or agreement of the contractor or anyone else. Therefore, the only reasonably conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him protection and exculpation from risk of liability for the insured loss. . . . [T]he contract insurance provision is valuable to the contractor for the very purpose this case exemplifies and serves to limit the owner to insurance proceeds even though the loss was caused by the negligence of the contractor.

Id. at 239-40 (quoting Housing Inv. Corp. v. Carris, 389 So.2d 689, 690 (Fla. App. 1980)).

The AIA, which drafts these form documents for use throughout the construction industry, takes the view of the dissent in Brisk and "has chosen to . . . put the ultimate loss on the property insurer who covered the risk." 2 Sweet on Construction Industry Contracts § 22.04[M], at 783 (4th Ed. 1999). The AIA has made "frequent additions" to the form document "to try to close all of the loopholes" and "kill subrogation off" despite reluctance by some Courts to enforce such provisions. Id. As a result, the contract signed by the parties in this case is different from the earlier version analyzed in Brisk. Specifically, in addition to the waiver provision in 11.3.7, the contract, in paragraph 11.3.5, contains a waiver of damages covered by insurance if the Owner insures "properties adjoining or adjacent to the site by property insurance under policies separate from those insuring the Project." See also Sweet, supra, at 780 (discussing addition of quoted language to AIA form in 1987).

The Third Department of the New York Appellate Division considered the version of the AIA form the Court is faced with here. In Mu Chapter of the Sigma Pi Fraternity of the U.S. Inc. v. Northeast Constr. Serv., Inc., 273 A.D. 579, 709 N.Y.S.2d 677 (3d Dep't 2000), the court considered whether the insurer of a building owner could sue a contractor for covered damage to the building caused by a fire. Id. at 579-80. The owner, Sigma Pi, "contracted with defendant to

13

perform renovations and improvements upon its fraternity house, including the construction of a four-story addition." Id. at 579. Sigma Pi had failed to obtain insurance (as required by the policy) to cover the interests of the contractors and subcontractors in the project, but did have general property insurance and an "installation floater" "to cover building materials in transit to or located on the site that had not yet become part of the realty." Id. at 580. All of the damage that resulted from the fire was therefore covered by the general property insurance. The Mu court determined that all claims by the insurer were prohibited by the contract; specifically, the court reasoned:

> Section 11.3.5 of the General Conditions provides that if the owner insures property adjoining or adjacent to the site under policies separate from those insuring the project, the owner waives all rights for damages caused by fire covered by such insurance in accordance with section 11.3.7 of the General Conditions. Section 11.3.7 provides, in pertinent part, that "[t]he [o]wner and [c]ontractor waive all rights against . . . each other . . . for damages caused by fire . . . to the extent covered by property insurance obtained pursuant to [section 11.3.1] or other property insurance applicable to the [w]ork. . . . A waiver . . . shall be effective as to a person or entity . . . whether or not the person or entity had an insurable interest in the property damaged." Clearly, the insurance previously purchased by Sigma Pi covering its existing structure constituted insurance covering property that was adjoining and adjacent to the work contracted for and was insurance separate and apart from the insurance required by section 11.3.1, which, as noted previously, Sigma Pi failed to obtain. As such, Sigma Pi waived any claims against defendant for damages caused by fire to the extent covered by that insurance and said waiver precludes [the insurer] from seeking damages as a subrogee for the moneys that it paid under such policy.

Id. at 581-82. In response to the insurer's protests that the Court of Appeals holding in Brisk should control, the court noted that "the Court of Appeals in Brisk was considering the effect of a waiver clause contained in the 1976 version of the [AIA form]. Such clause has since been amended for the express purpose of overcoming the holding in Brisk." Id. at 582 n.2.

14

Allianz urges this Court to decline to follow Mu. Allianz argues that this Court has previously followed Brisk, although by Allianz's own admission that decision, Fireman's Fund Ins. Co. v. Krohn, 1993 U.S. Dist. LEXIS 10772 (S.D.N.Y. 1993), is "silent as to which version of the AIA was being analyzed." Plaintiff's Sur-reply Letter at 3. Moreover, the Court in Fireman's Fund noted that it was "constrained" to follow the majority, rather than the dissent, in Brisk, and that the contract provisions it was considering were "virtually identical." Id. at *12.

Here, because the contract at issue is significantly different from the one considered in Brisk–indeed, it contains changes effectuated specifically in response to Brisk–this court is not similarly constrained. Although this Court must "construe and apply state law as . . . the state's highest court would," Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 89 (S.D.N.Y. 2002), the Court is persuaded that the analysis in Mu reflects the approach the Court of Appeals would take if faced with the 1987 AIA form.[8] Read together, the various provisions of paragraph 11 evoke a clear intent to preclude recovery of any damages covered by insurance. Paragraph 11.3.7 waives all subrogation rights for any damage covered by insurance specific to the work contracted, and paragraph 11.3.5 waives subrogation rights as to damages covered by insurance for the property generally.

Allianz contends that the terms "adjoining and adjacent" in paragraph 11.3.5 "refer to property other than to the damaged property itself." Plaintiff's Sur-reply Letter at 3. But this reading presses too hard on the contractual language, which waives all damages as to "properties

---

[8]However, contrary to Structure Tone's contention, the fact that the Court of Appeals declined to review Mu, 95 N.Y.2d 768, 721 N.Y.S.2d 605, does not indicate that Court's approval of the decision. See Haynie v. Mahoney, 48 N.Y.2d 718, 422 N.Y.S.2d 370 (1979) ("Denial of leave to appeal by the Court of Appeals has no precedential effect.")

adjoining or adjacent to the site [covered] by property insurance under policies separate from those insuring the Project." The language in 11.3.5 is broad enough that it would in fact probably cover separate properties surrounding the one where construction is being performed (for example, if an insured owned a row of buildings each covered by separate policies). However, this does not suggest that <u>only</u> neighboring properties, and not the one where the construction is being performed, should be encompassed by the language.

In <u>Mu</u>, just like here, there was only one property, and one general property insurance policy at issue. Allianz urges that the work, and therefore the "site," in <u>Mu</u> was an addition to the original building. However, the addition was only part of the work being performed by the contractors in <u>Mu</u>, and the damaged property was the building where the rest of the work was being performed. Similarly, here, the property insurance covered the property encompassing the work site. The relevant work site was the sub-basement, and the building in which the damage occurred is property--the building as covered by the general policy--<u>adjoining</u> that site. The waiver of subrogation therefore applies to all of the damages that were covered by insurance, which are the entirety of the damages sought by Allianz in this case.

## IV. Conclusion

Because the subrogation waiver provision is enforceable and because it applied to the entirety of the damages sought by the insurer in this case, the motion by Structure Tone and Eagle for summary judgment as to all of Allianz's claims is hereby GRANTED. The clerk of court is directed to close this case. Any pending motions are moot.

SO ORDERED

DATED:  New York, New York

August 15, 2005

_Kimba M. Wood_

Kimba M. Wood

United States District Judge